LuVERNA M. MURPHY, Plaintiff and Appellant, v. JOE
THEODORE CALLAGHAN, Defendant and Respondent.

No. 11997.
Submitted June 18, 1971.
Decided July 19, 1971.
Rehearing Denied August 9, 1971.
487 P.2d 304.

Jordan & Cummings, Lee A. Jordan, Missoula, argued, for
plaintiff and appellant.

Garlington, Lohn & Robinson, William Evan Jones, and Gary L. Graham, Missoula, argued, for defendant and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Plaintiff appeals from a verdict and judgment of the District Court of the Fourth Judicial District, Missoula County, in favor of defendant. Plaintiff brought this action to recover damages for personal injuries resulting from an automobile accident.

Plaintiff, LuVerna M. Murphy, on April 8, 1970 at approximately 3 p.m., while on her way to work became involved in a motor vehicle accident. She was proceeding south on Orange street in the city of Missoula and as she approached the intersection of 4th and Orange streets she stopped. While stopped her vehicle was struck from behind by a vehicle driven by the defendant, Joe Callaghan. According to plaintiff, at the time of the accident the traffic on Orange street, due to a traffic light on 5th street, was backed up and had she crossed the intersection she would have blocked the intersection at 4th street. For this reason she came to a stop, leaving the intersection clear for cross traffic on 4th. Defendant testified plaintiff came to a sudden stop, which caused the rear end collision.

Plaintiff testified she was traveling between 15 and 20 miles per hour when she saw that traffic was backed up for a block ahead of her. For this reason she came to a slow stop at 4th street, stopping on the far side of the intersection to allow traffic to flow on 4th street.

Two witnesses testified for plaintiff, Police Officer H. Allen Baker and Mrs. Anna Engebretson. Mrs. Engebretson testified that at the time of the accident she was driving on 4th street and had come to a stop at Orange street because of a stop sign requiring a stop before entering Orange street. She noted at the time she stopped that the traffic on Orange had been backed up from 5th street to 4th street; that as she came to a stop she saw plaintiff coming to a slow stop on the far side of the intersection, leaving the intersection clear for her to cross Orange street.

Shortly after plaintiff stopped, Mrs. Engebretson saw defendant's car coming down Orange street. She testified: "* * . * it came too fast to be able to stop suddenly." In Mrs. Engebretson's view, the defendant was not looking ahead until it was too late to avoid hitting plaintiff's car. After the accident Mrs. Engebretson crossed the intersection, parked her car, and returned to the accident. By that time Officer Baker had arrived.

Officer Baker was in the area of the accident at the time he was called by radio to investigate the accident. He estimated he was on the scene within minutes and that on arrival he found plaintiff's car on Orange street, creating a traffic hazard. Defendant had driven his car onto 4th street, where it was parked awaiting the police inspection. Officer Baker testified plaintiff's car had damage to the rear end, defendant's car was damaged in the front.

Baker further testified plaintiff's statement at the scene was to the effect that because of the backed up traffic she had stopped on the far side of 4th street to allow the traffic to flow on 4th street and avoid blocking 4th street. In questioning defendant at the scene Baker was told by defendant that he was traveling on Orange street when all of a sudden the vehicle in front of him stopped, and he was unable to avoid the collision. Officer Baker testified that at first defendant had been uncooperative, had refused to answer questions, and denied he had been drinking. Baker detected what he thought was the odor of alcohol on defendant's breath and finally defendant admitted having had one drink.

Officer Baker gave defendant two citations, one for following at an unsafe distance, and the other for having no driver's license. Defendant later plead guilty to both counts and paid fines.

At the scene of the accident plaintiff told Officer Baker she "was having some pain in her neck and shoulders."

At the trial several physicians and a chiropractor testified as to plaintiff's injuries and the treatment given. Dr. C. R. Svore, the first treating physician, testified that she had an "acute

'cervical sprain'' and a broken rib that required treatment by a physiotherapist and drugs to alleviate pain.

Defendant testified that on the day of the accident he had met a lady friend and had celebrated her birthday by having one drink just prior to the accident; that while driving on Orange street, with his lady friend Mrs. Higgins, at between 15 to 20 miles per hour, plaintiff stopped her car suddenly and he had been unable to stop in time to prevent the accident. Mrs. Higgins' testimony about the events prior to and at the time of the accident was about the same as that of defendant. Thus, there was conflict in the evidence as revealed by the testimony.

The jury returned a verdict in favor of the defendant.

On appeal, plaintiff raises two issues. Did the trial judge err in:

1. Refusing to grant a directed verdict on the question of liability in favor of plaintiff?

2. Refusing to grant a new trial or a mistrial?

■ On issue No. 1, because of conflicting evidence, the court was correct in not granting a directed verdict.

■ In regard to issue No. 2, considering the facts as testified to by the witnesses and the rulings of the trial court, it is apparent on review that the trial court's refusal to grant a new trial or a mistrial was error.

We note here that during the trial of the case the trial judge made several observations from the bench, including a reprimand of plaintiff's attorney; all of which may have affected the outcome of the case.

Here we are considering a cold record and find it difficult to describe the various happenings during the trial. However, it appears plaintiff's counsel was a young lawyer, trying his first case. This was the first case of the trial calendar. The observations made by the trial judge during the course of the trial we know were made in good faith and in an honest effort to aid the young counsel. But, as sometimes happens, the best efforts go astray as they did here. The trial judge became irked and reprimanded the young counsel before the jury. The record

does not display the trial judge's anger and it is denied by other counsel, but here, after the instructions had been settled, an effort by plaintiff's counsel to renew his motion for a mistrial confirmed the trial judge's anger in this colloquy which took place in chambers:

"MR. CUMMINGS: Your Honor, I wish to be heard further to the effect that I persist in my reason for the motion in that I continue to believe that the reprimand given in open court before the jury was given by the Court to me in anger; and that it is highly prejudiced my client in this case before the jurors.

"THE COURT: Further?

"MR. JONES: Yes. May the record further show that the Court's round-up instruction sub-paragraph six specifically covers that matter, and extinguishes any valid grounds for the motion for mis-trial.

"THE COURT: Mr. Cummings, your motion is proper. I had debated as to whether I should invite you to make such a motion, and had not reached a decision as late as the time that you were all coming through the door. You supplied an answer to that and made your motion. I will not grant it."

From the cited conversation, it is obvious that the trial judge also felt he had acted in such a manner as to have discredited plaintiff's case, yet for some reason the court failed to grant plaintiff's motion.

In view of the circumstances herein set forth, we feel that justice requires that a new trial be ordered.

Judgment is reversed and a new trial ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, and CASTLES, concur.